Wanamaker, J.
The major question raised is, Is said act as an entirety an unconstitutional statute because it violates Section 26, Article II of the Constitution, which reads:
“All laws, of a general nature, shall have a uniform operation throughout the state,” etc.
Is this a law of a general nature? It relates wholly to the supervision, giving and taking of bonds, inspection of sureties, their responsibilities, the collection of forfeited bonds, and a record of all such matters touching general bonds in criminal cases in the courts of Cuyahoga county.
It is thus obvious that the legislation relates to the administration of justice in criminal cases, aiming to eliminate abuses entirely too common in our courts touching insufficient bonds; irresponsible bondsmen, defaults on bonds never collected, etc., all of which greatly hamper and delay the administration and enforcement of law.
That some such legislation is greatly needed in a number of counties of the state having a large number of- criminal cases in various courts is no doubt true. That Cuyahoga county alone needs such legislation is quite another question; whether *386 such need in Cuyahoga county is so different, so distinctive, so substantial as to intelligently and logically differentiate it from the needs of all other counties in the state, presents a very vital question.
The Constitution of Ohio provides for bail in all criminal cases except “capital offenses where the proof is evident or the presumption great.” So the bailing or bonding business in criminal cases is one applicable to every one of the eighty-eight counties, differing only in degree, the crimes bearing a substantial proportion to their population and likewise in some degree to the vigor and efficiency with which the law is enforced.
The subject-matter of the legislation, no less than the terms and provisions dealing with the subject-matter, renders self-evident the truth of the proposition that the law here in question is a law of a general nature, and that therefore the constitution requires that it shall be of uniform operation throughout the state.
If it be not so, then the state of Ohio is subject to being cut up into eighty-eight strips, corresponding to the eighty-eight counties, and each one of these eighty-eight classes being dealt with separately, the constitutional provision requiring uniformity throughout the state of laws of a general nature is nullified.
But it is urged that classification is not only allowable, but very often necessary in legislation. In the syllabus of City of Xenia v. Schmidt, 101 Ohio St., 437, this language appears:
“Classification is an inherent right and power in legislation, limited only by the constitution and the judicial constructions thereunder.
*387 “A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates.”
Now, how can it be said that there is any appreciable, substantial difference between the evils resulting from the giving of bonds in criminal cases in a county the size of Cuyahoga and those resulting from the giving of bonds in a county the size of Hamilton, Franklin, Lucas, or any of the other larger counties, where bonds are numbered by tbe hundreds and thousands?
If written constitutions are to restrain legislation, then here is the time and place to invoke protective restraint against such ripper legislation as occurs in this instance. This same policy was for many years resorted to by the legislature in dealing with municipal governments. Many cases found their way to the supreme court, seeking to enjoin artificial, arbitrary and evasive classifications, resorted to for merely local or partisan purposes. The court, with commendable courage, finally dealt a fatal blow to this species of legislative legerdemain in State, ex rel. Knisely, v. Jones, 66 Ohio St., 453, and State, ex rel. Sheets, Atty. Genl., v. Beacom, 66 Ohio St., 491.
What possible distinction can arise making the act applicable only to counties having twelve common pleas judges is absolutely unintelligible. The act as a whole upon its face bears every evidence of special legislation for one of the political subdivisions of the state known as a county, and exempting therefrom all the other eighty-seven political subdivisions that have to deal with identically the same subject-matter, varying only in degree.
*388 This court has held again and again that matters relating to the jurisdiction of courts of common pleas in the several counties must be uniform throughout the state. Matters dealing with the procedure under that jurisdiction must be equally uniform, and the bonding business in criminal cases is certainly comprehended within the term “procedure.” If the same effort were made in legislation to observe the constitution as is made to evade it, constitutional government would be more reverenced by the public.
The unconstitútionality of the act as a whole is so apparent that further discussion of its parts would seem unnecessary; but the act has so many infirmities in it that some of them are at least worthy of being pointed out in order that future acts may not violate similar provisions.
Bach court has a clerk, and it would be entirely proper and legal to impose upon that clerk the supervision, inspection and recording that is required under the statutes in this case; and, if he has not enough deputies, to provide him with additional deputies therefor. Instead of that, a new officer, and a county officer, at that, is created, violating Section 1, Article X of the Constitution, requiring that all county officers shall be elected. The act also violates the provision of Section 20, Article II, requiring the legislature, instead of some judicial officer, to fix the compensation.
Again, the legislature in this enactment discriminates against individuals and in favor of surety companies.
There are other objections of constitutional vitality, but of less importance, that are quite unneees *389 sary to be considered in tbis opinion. The act as a whole, and almost every part of it, is a clear invasion of legislative power under the constitution, and must therefore be held unconstitutional.

Judgment affirmed.

Marshall, C. J., Johnson, Hough, Robinson, Jones and Matthias, JJ., concur.